UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:17-cr-00037-JAW |
| | ) | |
| DAVID JACK, | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION
ON DEFENDANT'S MOTION TO SUPPRESS**

In a one-count indictment, Defendant is charged with possession of material containing child pornography. (Indictment, ECF No. 1.) The matter is before the Court on Defendant's motion to suppress. (Motion, ECF No. 39.) Through the motion, Defendant seeks to exclude evidence obtained during a search of Defendant's two laptop computers and cell phone. Defendant also asks the Court to exclude certain statements Defendant made to law enforcement officials at the time of his arrest.

Following a review of the record evidence, and after consideration of the parties' arguments, I recommend the Court deny the motion to suppress.

**PROPOSED FINDINGS OF FACT**

Based on the record evidence, I propose the Court find the following facts:

1. On August 22, 2016, a state court judge approved a request for the issuance of a warrant to search Defendant's residence and person.

2. The warrant authorized law enforcement officials to seize, among other things, "computers and computer equipment" and "cellular telephones belonging to [Defendant]."

3. The warrant also included the following authorization: "It is further authorized that in the event that computers or electronic data storage devices are in fact seized, they may be examined by a trained forensic examiner from the Bangor Police Department or any other State or federal law enforcement agency qualified to do so, either at the place of seizure or upon removal of the equipment to a forensic lab, or both. This warrant further authorizes the making of a duplicate 'image' of any computer or electronic data storage device that is seized pursuant to this warrant for subsequent forensic examination."

4. The state court judge approved the search warrant after reviewing the affidavit of Joshua Kuhn, a detective with the Bangor Police Department.

5. In his affidavit, Detective Kuhn recounted some of the information he obtained during the investigation he conducted following the report of the sexual assault of a nine-year-old female, who was referred to in the affidavit as JV. The information included JV's report of encounters with Defendant that would constitute a reasonable basis to conclude that Defendant sexually assaulted JV on multiple occasions beginning in the middle of July 2016.[1]

6. Detective Kuhn also asserted in his affidavit that JV reported that during one of her encounters with Defendant, Defendant showed her sexually explicit pictures and videos on his cell phone, which pictures and videos included girls who were the approximate age of JV (9 years).

7. Detective Kuhn also averred:

> Persons who possess or disseminate child pornography sometimes retain those images for a very long period of time as part of a larger collection of child

---
[1] The search warrant was signed on August 22, 2016.

pornography. They tend to keep the collection at home (and sometimes at their workplace) so that they can privately access the collection at their convenience, and the collected images are usually stored in electronic data storage devices (such as hard drives, floppy disks, zip disks, compact disks, digital video disks, memory sticks, etc.) and accessed through use of computers and computer equipment (such as monitor, keyboard, compact disk drive, zip disk drive, USB drives etc.).

8. On August 23, 2016, in accordance with the search warrant, law enforcement officials searched Defendant's residence. During the search, law enforcement officials confiscated two laptop computers and a cell phone. A subsequent forensic search of the computers and cell phone revealed child pornography material.

9. Defendant was arrested on September 7, 2016, at approximately 3:00 p.m. on the sidewalk on the Franklin Street Bridge in Bangor, Maine.

10. After his arrest, Defendant was not read his Miranda rights.

11. Defendant's wife, several detectives, and at least one police officer were present during Defendant's arrest.

12. After the officers informed Defendant that he was under arrest, the following exchanges took place:

> Defendant's wife: What bothers me is that this girl was never next door alone with kids cause I was there that one time my sister was there. My sister was a witness. He was never alone with the kids.
>
> Detective Kuhn: OK well, I'm not even talking about the kids right now. I'm talking about the images on his phone; he has no explanation of how they got there.
>
> Defendant: Yes, I do. I'm telling you that I gave that phone to Hugh. I've given it to him several times.

* * *

> Defendant: Well I hope you guys find him before my f------g brothers find him.
>
> Detective Kuhn: We will
>
> Defendant: Because chances are you won't be talking with him if they find him.
>
> Detective Kuhn: Well
>
> Defendant: I was supposed to meet him f------g like 2, 2:30 today.

(Gov't Ex. 2a.)

## DISCUSSION

### A. Validity of Search Warrant

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To satisfy the Constitution, an application for a search warrant must demonstrate probable cause to believe (1) that a crime has been committed (the "commission" element) and (2) that the place to be searched contains evidence of the crime (the "nexus" element). *United States v. Cordero-Rosario*, 786 F.3d 64, 69 (1st Cir. 2015) (quotation marks omitted). "The task of the issuing magistrate is ... to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). When reviewing a magistrate's probable cause finding, the reviewing court gives "significant deference" to the magistrate's initial evaluation and relief is warranted only if there is no substantial basis for the probable cause finding. *Cordero*, 786 F.3d at 69 (quotation marks

4

omitted). Probable cause is assessed in light of the totality of the circumstances contained in the search warrant affidavit, and is to be evaluated in light of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 230 – 31 (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).

As to the nexus finding, the nature of the crime under investigation is an important consideration. *Cordero*, 786 F.3d at 69. The affidavit in support of the search warrant application must connect, with more than a conclusory assertion of suspicion, the location of the proposed search to the subject crime. *Id.* at 71. In other words, the affidavit must supply sufficient facts to permit the reviewing judicial officer to find probable cause that a nexus exists between the crime under investigation and the location to be searched. *Id.* at 71 – 72.

Defendant contends the supporting affidavit lacks the facts necessary to support a probable cause determination as to Defendant's computers and cell phone. Defendant argues in part:

> The affidavit lacks the sort of information typically found in search warrant affidavits for child pornography. There is no information that an IP address was used to view and download child pornography at the address. No one saw or had any suspicion that [Defendant] had child pornography on a computer, or even a computer.

(Motion at 7.) As to the cell phone, Defendant contends: "The allegation [that Defendant displayed a cell phone with images of child pornography] lacks any detail as to the type of cellphone allegedly possessed, including even the color." (Motion at 8.)

Defendant's argument is unpersuasive. Defendant's contention that the affidavit lacks

the information "typically found in search warrant affidavits for child pornography" ignores the basic proposition that a probable cause determination is based on the totality of the circumstances in each case. *United States v. Maguire*, 918 F.2d 254, 258 (1st Cir. 1990) (citing *Gates*, 462 U.S. at 238 n.11 ("There are so many variables in the probable cause equation that one determination will seldom be a useful 'precedent' for another.")). Indeed, this case demonstrates that forensic investigations of various internet communications is not always necessary to establish probable cause. Here, the affidavit includes the observations of an eyewitness to Defendant's display of child pornography images on an electronic device. Based on the eyewitness account, the state court judge could reasonably conclude that through an electronic device, Defendant had downloaded images of child pornography.

As to the nexus between the child pornography images on the cell phone (i.e., the alleged crime) and the computers, the First Circuit's discussion in *United States v. Rivera* is instructive: "When it comes to nexus, common sense says that a connection with the search site can be deduced 'from the type of crime, the nature of the items sought,' plus 'normal inferences as to where a criminal would hide' evidence of [a] crime." 825 F.3d 59, 63 (1st Cir. 2016) (citing *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999) (quoting *United States v. Charest*, 602 F.2d 1015, 1017 (1st Cir. 1979)).

Common sense suggests that if an individual has images of child pornography downloaded to one electronic device, the individual likely has similar, if not the same, images on other electronic devices the individual possesses. The state court judge, however, did not have to rely solely upon his own common sense to find probable cause. In his supporting

6

affidavit, Detective Kuhn specifically stated:

> Persons who possess or disseminate child pornography sometimes retain those images for a very long period of time as part of a larger collection of child pornography. They tend to keep the collection at home (and sometimes at their workplace) so that they can privately access the collection at their convenience, and the collected images are usually stored in electronic data storage devices (such as hard drives, floppy disks, zip disks, compact disks, digital video disks, memory sticks, etc.) and accessed through use of computers and computer equipment (such as monitor, keyboard, compact disk drive, zip disk drive, USB drives etc.).

Defective Kuhn's affidavit describes a totality of circumstances sufficient to establish a nexus between the images of child pornography on the cell phone and computers located at Defendant's residence.

Defendant next contends the information in the affidavit was stale and thus could not support a probable cause determination because the affiant could not precisely state when Defendant displayed the pictures and videos on the phone. (Motion at 8.) According to JV's mother, JV reported that the first of the encounters with Defendant occurred in the middle of July.

When considering a claim of staleness, a court does not "measure the timeliness of information simply by counting the number of days that have elapsed." *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008). Instead, a court "must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." *Id.* In *Morales*, the First Circuit affirmed the denial of a motion to suppress on staleness grounds, despite the passage of three years, where the warrant affiant explained that "customers of child pornography sites do not quickly

7

dispose of their cache." *Id.* (collecting cases and observing the information was "not a new revelation").

According to the affidavit, Detective Kuhn met with JV and her family on August 21, 2016, at which time the family had been neighbors of Defendant for three months. While this fact suggests Defendant conceivably could have shown JV the videos at any time in the prior three months, JV's mother stated that JV told her the incidents began "in the middle of July." (Affidavit ¶ 10, ECF No. 39-1.)

Like the affiant in *Morales*, Detective Kuhn explained to the state court judge that persons who possess or disseminate child pornography tend to collect and save such materials over long periods of time. Given that the videos were displayed on Defendant's cell phone at most approximately 5 to 6 weeks before the approval of the warrant, and given Detective Kuhn's assertions regarding the practices of those who maintain child pornography on electronic devices, the information was not stale and can properly be considered as part of the probable cause determination.

**B. Good Faith Exception**

Even if Defendant were to prevail on his challenge to the validity of the search warrant as it relates to the computers and the cell phone, suppression of the evidence is not warranted. Under the good faith exception, "evidence from an illegal search need not be suppressed if the police officer who conducted the search 'acted in objectively reasonable reliance on a search warrant, issued by a neutral and detached Magistrate, that later was determined to be invalid.'" *Cordero*, 786 F.3d at 72 (quoting *Arizona v. Evans,* 514 U.S. 1, 11 (1995)). In

accordance with the good faith exception, "evidence will be suppressed only when the police conduct is 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Echevarría-Ríos*, 746 F.3d 39, 41 (1st Cir. 2014) (quoting *Herring v. United States,* 555 U.S. 135, 144 (2009)). In this case, the record lacks any evidence to suggest that law enforcement's conduct was anything other than objectively reasonable, or that they acted with any culpability that requires an order of exclusion to deter similar conduct.

### C. Defendant's Statements

Defendant argues that all of the statements he made following his arrest must be suppressed because he did not receive the Miranda warning and his statements "were made as part of a continuing interrogation the officer began with [him] before arresting him." (Motion at 13.)

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court stated, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." "The custodial interrogation inquiry necessarily demands determination of its two subsidiary components: 1) custody and 2) interrogation." *United States v. Ventura*, 85 F.3d 708, 710 (1st Cir. 1996). Here, the Government concedes that Defendant was in custody at the time of the challenged statements. The Government, however, contends that Defendant's statements were not the product of an interrogation.

9

"Interrogation refers to both express questioning and its 'functional equivalent,' which includes any 'words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the subject.'" *Id.* at 711 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). While an officer's intentions might be relevant in some cases, the inquiry "does not turn on the subjective intent of the particular police officer." *United States v. Taylor*, 985 F.2d 3, 7 – 8 (1st Cir. 1993); *Unites States v. Rosario-Cintron*, 194 F. Supp. 3d 161, 170 (D. P.R. 2016).[2] Instead, "the inquiry is objective: how would the officer's statements and conduct be perceived by a reasonable person in the same circumstances?" *Ventura*, 85 F.3d at 711.

In the conversation that followed Defendant's arrest, Defendant's wife evidently attempted to question the veracity of JV when she asserted that Defendant was never alone with the children. Detective Kuhn responded that his concern at the moment was not with any particular child, but with the images on the phone, and with the fact that Defendant "has no explanation of how they got there." Defendant then stated that he gave the phone to an associate, suggesting that the associate must be responsible for the content of the phone. Shortly thereafter, Defendant expressed his anger toward the associate, stating that he hoped the officers found the person before Defendant's brothers did.

First, the record lacks any evidence to suggest Defendant's statements regarding his

---

[2] Whether the officer's words or actions are reasonably likely to elicit an incriminating response "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. 291, 301 (1980).

10

brothers were the result of an interrogation. "Volunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478 (1966). In addition, while an interrogation does not always have to take the form of a question, on this record, Detective Kuhn's statement in response to the observations of Defendant's wife does not constitute an interrogation. Objectively, a person to whom Defendant's wife made the observation would understand that she was looking for a response. Detective Kuhn responded. Detective Kuhn did not initiate a conversation in Defendant's presence in an attempt to elicit a response from Defendant. Defendant's responsive statement, therefore, is not the product of an interrogation and is thus not subject to exclusion.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court deny Defendant's motion to suppress.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 18th day of October, 2017.